*John M. Pindras*, for plaintiff in error.

*Herrick & Hopkins* and *H. DuLaurence*, for defendant in error.

## FRAUDULENT PURPOSE TO DEFEAT COLLECTION OF CLAIM.

[Circuit Court of Summit County.]

GOODYEAR TIRE & RUBBER CO. v. RUBBER TIRE CO.

Decided, October, 1901.

*Attachment—Evidence Sufficient to Sustain—Where a Fraudulent Purpose is Shown in the Purchase of Goods.*

Evidence showing a fraudulent purpose on the part of a defendant corporation, in that with the intention of embarrassing the plaintiff, a large amount of goods were purchased from the plaintiff, for which payment was refused, and steps then taken to turn stock of the defendant into debenture bonds with authority in the holders to seize the company's property upon short notice, thereby creating an indebtedness which did not exist at the time the goods were bought, is sufficient to sustain an attachment upon the property of the defendant.

CALDWELL, J.; HALE, J., and MARVIN, J., concur.

Error to the Summit Common Pleas Court.

The Goodyear Tire & Rubber Company sued the Consolidated Rubber Tire Company and sued out an attachment. Motion was made to dissolve the attachment and was granted, and error prosecuted to this court, and that branch of the case only is here.

This attachment was sued out on the ground that this debt was contracted without any intention of paying it, and that the defendant was disposing of its property. The facts are these: There is evidence tending to show that the defendant in error

was buying goods of the plaintiff, and that they called a sales-man to know how much of a loss the plaintiff could stand. He told them he thought $50,000 or $75,000 would stagger them—words to that effect. The orders immediately increased to a large amount, and they did not pay them, and this suit is brought to get pay out of the defendant, and this attachment is sued out. There is other evidence tending to show that it was the purpose of the defendant, in buying these goods, to buy a very large amount (as it did), and refuse to pay for them and keep the plaintiff from obtaining the money, and put it in finan-cial embarrassment, if not break it up. This is not the only evidence. This is one of those cases where the evidence must all be put together.

The defendant is a corporation, and it has, if I remember right, some four millions and a few hundred thousand or a few hundred dollars of common stock, and nearly the same amount of preferred stock. About this time the company got up a plan and was about to put it into execution, when this suit was brought and this attachment sued out, to turn a large amount, nearly half of that stock, into debenture bonds; and the plan, as it is in evidence in the record, shows that the persons who should hold them, who would be the stockholders, would thus be turned into creditors, so that they could pounce upon this company at any time with a very short notice whenever such and such things occurred; and those things were of such a nature that a claim could be set up and established at any time —established if the company and these new creditors were in league together to defeat the lawful creditors of the company, thus creating an indebtedness there that did not exist when they bought these goods. The purpose was to create an in-debtedness of over three millions dollars to permit the creditors to seize the assets of the company at any time.

Now, in considering this case, it won't do to consider what this company did by way of buying goods and not intending to pay for them—to consider that entirely separate from the other. Was it carrying on a fraudulent purpose? It was all one pur-pose, we think, in this testimony—just one purpose, and the purpose consisted of, perhaps, three steps:  We will buy an

enormous amount of goods; we will refuse to pay; we will put ourselves into such shape that they never can collect if the plaintiff gets judgment. Now, these three steps all constitute one, as the motive was one; the purpose was one, and by dividing it up it can be applied, or, taking it as a whole, it should be applied to see whether the company was buying without intent to pay, and whether it was making a disposition of its property to defraud this plaintiff.

You may take this whole plan, together with what they said as to the purpose of the company in creating this debt, and in running it along, and in ordering goods to several times the amount of business that it had been doing or was expecting to do, and thus running up a debt suddenly and as quickly as possible, and then getting itself in shape so that the plaintiff, if it recovered judgment, could not collect it, and we think this evidence was sufficient to hold this attachment, and that the court erred in dissolving the attachment.

The judgment is reversed and the case remanded for further proceedings.

*Slabaugh & Seiberling,* for plaintiff in error.

*Musser & Kohler,* for defendant in error.